**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| BRIAN WALTERS and MIRTA BIEL-WALTERS, *on behalf of themselves and all others similarly situated*, | ) ) ) ) | No. 2:14-mn-00001-DCN No. 2:14-cv-00544-DCN |
| Plaintiff, | ) ) | |
| vs. | ) ) | **ORDER** |
| PELLA CORPORATION, | ) ) | |
| Defendant. | ) ) ) | |

This matter is before the court on a motion to dismiss brought by defendant Pella Corporation ("Pella"). For the reasons set forth below, the court dismisses the Walters' breach of implied warranties claim; negligence claim; negligent misrepresentation claim; fraud by uniform written misrepresentation and omission claim; NDTP claim to the extent it relies on affirmative misrepresentations; and declaratory relief claim.

## I.  BACKGROUND

Plaintiffs Brian Walters and Mirta Biel-Walters ("the Walters") began constructing their Reno, Nevada home in late 2006. Am. Compl. ¶ 18. They engaged BGTC Construction to furnish and install the windows, doors, and exterior cladding on the home. Id. ¶ 21. In late 2008, BGTC Construction, on behalf of and at the request of the Walters, entered into an agreement with an agent of Pella for Designer Series windows to be used in the construction of the home. Id. ¶ 22. Construction of the home was completed in or around July 2009. Id. ¶ 23. In March 2010, the Walters contacted Pella regarding excessive condensation that they observed forming in the windows of their home. Id. ¶ 24. Pella investigated the problem, made repairs, and advised the

1

Walters that the problem had been corrected.  Id. ¶ 25.  In June 2010, the Walters again contacted Pella regarding problems with condensation forming in the windows, as well as other issues with the windows.  Id. ¶ 26.  Pella again investigated, made additional repairs, and advised the Walters that the problem was corrected.  Id. ¶ 27.  In November 2010 and April 2012, the Walters notified Pella that they had observed water intrude through two of their windows and Pella inspected the windows and made repairs.  Id. ¶¶ 28–31.  This occurred again in January 2013 and the Walters contacted Pella again regarding water intrusion through multiple windows in their home.  Id. ¶ 32.  Pella inspected the windows and informed the Walters that it was not responsible for the labor costs associated with the repair and replacement of the windows.  Id. ¶¶ 33–34.  Pella has since failed to provide any additional warranty or repair work.  Id. ¶ 35.

The Walters allege that the windows suffer from various design deficiencies, including a defect that allows water intrusion "through the glazing pocket, between the aluminum cladding and wood, through the crank hardware in the windows, and through the joint between the window frame-to-sash joint."  Id. ¶ 47.  According to the Walters, these defects cause leaks and allow water to be "trapped between the aluminum and the operable wood frame causing damage to the Windows and other property within the home."  Id. ¶ 48.  The Walters further allege that Pella was or should have been aware that the windows were defective.  Id. ¶ 52.

On January 7, 2014, the Walters filed a class action complaint against Pella in the United States District Court for the District of Nevada, alleging jurisdiction based on the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  The Walters amended their complaint on January 10, 2014, bringing the following seven causes of action:  (1) breach

of express warranty; (2) breach of implied warranties; (3) negligence; (4) negligent misrepresentation; (5) fraud by uniform written misrepresentation and omission; (6) violation of the Nevada Deceptive Trade Practices Act ("NDTPA"); and (7) declaratory relief.

Pella filed the instant motion to dismiss on January 31, 2014. The Walters opposed the motion on March 18 2014, and Pella replied on March 28, 2014. On February 27, 2014, the United States Panel on Multidistrict Litigation transferred the case to this court as part of the consolidated multidistrict litigation. Pella's motion to dismiss has been fully briefed and is ripe for the court's review.

## II.  STANDARDS

### A.    Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. See E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." Id. at 679. Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "Facts pled that are 'merely consistent with' liability are not sufficient." A Soc'y Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

### B.    Applicable Law

This case is predicated on diversity jurisdiction and was filed in federal court, so it is governed by state substantive law and federal procedural law. Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 130 S. Ct. 1431, 1448 (2010) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)). "In multidistrict litigation, the law of the transferee circuit governs questions of federal law." In re KBR, Inc., 736 F. Supp. 2d 954, 957 (D. Md. 2010) modified on reh'g sub nom. In re KBR, Inc., Burn Pit Litig., 925 F. Supp. 2d 752 (D. Md. 2013) vacated and remanded on other grounds, 744 F.3d 326 (4th Cir. 2014); see also In re Gen. Am. Life Ins. Co. Sales Practices Litig., 391 F.3d 907, 911 (8th Cir. 2004); Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993); In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987); cf. Bradley v. United States, 161 F.3d 777, 782 n.4 (4th Cir. 1998) (applying Fourth Circuit law to questions of federal law in a case transferred from the Fifth Circuit). Therefore, this court must apply Nevada substantive law and Fourth Circuit procedural law.

### III.  DISCUSSION

Pella asserts that all of the Walters' claims should be dismissed. The court considers each of Pella's arguments in turn.

### A.    Count I—Breach of Express Warranty

Pella argues that the Walters's breach of express warranty claim should be dismissed because the Walters do not allege any act in violation of the limited warranty

4

or any other express warranty. Def.'s Mot. 5. In response, the Walters assert that the terms of the limited warranty are unconscionable and that Pella breached express warranties beyond the terms of the limited warranty. Pls.' Resp. 3. The court will first consider the limited warranty and then consider statements allegedly made outside of the limited warranty.

### 1. Limited Warranty

The limited warranty included with the Walters' windows states:

> Pella warrants that the nonglass components of its [windows] . . . shall be free of manufacturing defects in material or workmanship or termite damage that significantly impair their proper operation and function for ten (10) years from the date of sale by Pella or its authorized dealer. If Pella is given notice of a defect in materials or workmanship occurring within ten (10) years from the date of sale by Pella or its authorized dealer, Pella shall, at its sole option: 1) repair or replace the defective part(s) or product(s) (with cost of labor included only within two [2] years of the date of sale by Pella or its authorized dealer) or 2) refund the original purchase price.

Am. Compl. ¶ 51; Def.'s Mot. Ex. 1.[1] The limited warranty also states that it "is the exclusive warranty for the Covered Pella Products" and that "**NEITHER PELLA NOR SELLER MAKE ANY OTHER WARRANTIES, EXPRESS OR IMPLIED** . . . ." Def.'s Mot. Ex. 1.

Pella argues that the Walters' allegations do not show that it breached the limited warranty. Def.'s Mot. 6–7. Rather, Pella argues that it did exactly what it was required to do under the limited warranty—it processed complaints from the Walters, inspected the windows, and made the necessary repairs. Id. However, the Walters allege that Pella

---

[1] In deciding a motion to dismiss, courts can consider documents that are attached to a motion to dismiss; that are clearly integral to, and relied upon, in the complaint; and whose authenticity no party disputes. Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). The Walters quote the limited warranty in their complaint, Am. Compl. ¶ 51, and do not dispute the authenticity of Pella's exhibit.

"informed [them] that Pella was not responsible for the labor costs associated with the repair and replacement of the non-functioning Windows," Am. Compl. ¶ 34, that "Pella has failed and refused to provide any additional warranty or repair work on the Windows in the Home," id. ¶ 35, and that "Pella has failed to adequately respond to Plaintiffs' warranty claims by providing the full cost to remove and replace the Windows," id. ¶ 94. Therefore, the Walters adequately plead breach of the limited warranty.

Moreover, the Walters argue that the limited warranty is unconscionable and, therefore, should not be enforced. Pls.' Resp. 5. Under Nevada law, a court is not required to enforce a contract or clause of a contract which it finds unconscionable as a matter of law. Nev. Rev. Stat. § 104.2302(1); see also Burch v. Second Judicial Dist., 49 P.3d 647, 649 (Nev. 2002). "Generally, both procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce a contract or clause as unconscionable." Burch, 49 P.3d at 650 (citations omitted). However, "less evidence of substantive unconscionability is required in cases involving great procedural unconscionability." D.R. Horton, Inc. v. Green, 96 P.3d 1159, 1162 (Nev. 2004). "A clause is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." Id. (citation omitted). Procedural unconscionability usually results from "the use of fine print or complicated, incomplete, or misleading language that fails to inform a reasonable person of the contractual language's consequences." Id. A clause is substantively unconscionable when the contract's terms and the surrounding circumstances at the time of execution are "so one-

6

sided as to oppress or unfairly surprise an innocent party." <u>Bill Stremmel Motors, Inc. v.</u> <u>IDS Leasing Corp.</u>, 514 P.2d 654, 657 (Nev. 1973).

Pella first argues that the Walters fail to show procedural unconscionability. Def.'s Reply 5–6. Pella relies on <u>Guerra v. Hertz Corp.</u>, in which a Nevada district court found that the complaint failed to allege procedural unconscionability because it contained no allegations that the contract failed to disclose terms, used fine print or misleading language, or was so complicated that it failed to inform a reasonable person of the contract's consequences. 504 F. Supp. 2d 1014, 1021 (D. Nev. 2007). The Walters have likewise not alleged such faults in the limited warranty. However, the Nevada Supreme Court has also recognized that procedural unconscionability can exist where the contract is a contract of adhesion. <u>D.R. Horton</u>, 96 P.3d at 1162 ("A clause is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms . . . because of unequal bargaining power, as in an adhesion contract . . . ."). Here, the Walters allege that the limited warranty "is not a negotiated contract." Am. Compl. ¶ 54. Therefore, the court finds that the Walters have adequately pleaded procedural unconscionability.

Pella also argues that the Walters fail to show substantive unconscionability. Def.'s Reply 6–7. However, the Walters allege that "Pella's shipping of the Windows with prior knowledge of the defects . . . makes the limitations of the Limited Warranty unconscionable in all respects." Am. Compl. ¶ 52. A limitation on warranty for a product the manufacturer allegedly knows is defective is potentially so "one-sided" as to give rise to substantive unconscionability—at least at the pleading stage. <u>See</u> <u>Barnext</u> <u>Offshore, Ltd. v. Ferretti Grp. USA, Inc.</u>, 2012 WL 1570057, at *10 (S.D. Fla. May 2,

2012) ("[I]f a product contains a known latent defect then any warranty limits may be unconscionable.").

Nevada law provides that "[w]hen it is claimed . . . that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."  Nev. Rev. Stat. § 104.2302(2); see also In re Hardieplank Fiber Cement Siding Litig., 2013 WL 3717743 (D. Minn. July 15, 2013) (applying Nevada law and denying motion to dismiss in order to give plaintiffs the opportunity to submit evidence regarding the applicability of the unconscionability doctrine).  At the motion to dismiss stage, the Walters have properly pleaded that the limitation on warranties contained in the limited warranty clause is unconscionable.  Therefore, the Walters may base their breach of express warranty on statements outside the limited warranty to the extent those statements are warranties.

### 2.      Other Statements

Pella also argues that none of the statements made outside the limited warranty constitute express warranties.  Def.'s Mot. 7–8.

Under Nevada law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  Nev. Rev. Stat. § 104.2313.  The Walters allege that Pella represented and warranted that the windows "conformed to the applicable Nevada building codes" and other industry standards, have "[p]roven resistance to water penetration," are Pella's "most energy-

efficient wood and windows and doors," and are "test[ed] for air infiltration to help eliminate drafts."  Am. Compl. ¶¶ 39, 42.

Pella first argues that these statements fail to support the breach of express warranty claim because the Walters do not allege that they received and read these statements before they authorized BGTC Construction to buy the Pella windows; therefore, Pella argues that the statements could not become the basis of the bargain. Def.'s Mot. 8.  However, the complaint alleges that "these representations became part of the basis of the bargain when Plaintiffs . . . purchased the homes with Pella's express representations concerning the quality of the Windows," Am. Compl. ¶ 41, and that the Walters "relied on Pella's published specifications and advertisements regarding the quality of the Windows."  Id. ¶ 43.  At the motion to dismiss stage, the Walters have properly pleaded that any statements made by Pella outside of the limited warranty became part of the basis of the bargain.

Next, Pella argues that the statements at issue cannot be considered warranties because they are puffery.  Def.'s Reply 9.  Statements that are "generalized, vague and unspecific" are "mere 'puffery' on which a reasonable consumer could not rely."  Glen Holly Entm't, Inc. v. Tektronix Inc., 343 F.3d 1000, 1015 (9th Cir. 2003).  On the other hand, "misdescriptions of specific or absolute characteristics of a product are actionable" and a "specific and measurable advertisement claim of product superiority based on product testing is not puffery."  Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997) (citation omitted).  "District courts often resolve whether a statement is puffery when considering a motion to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6) . . . ."  Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 245 (9th Cir. 1990).

Southland Sod provides an instructive analysis of what is and is not considered puffery.  In that case, the Ninth Circuit held that the defendant's claim that "Less is More" was generalized boasting upon which no reasonable buyer would rely.  Southland Sod, 108 F.3d at 1145.  However, it held that a claim that the defendant's brand of sod would require "50% less mowing" was not puffery because it was a "specific and measurable advertisement claim of product superiority based on product testing."  Id. Another case relied on by both parties, Smith-Victor Corp. v. Sylvania Elec. Prods., Inc., 242 F. Supp. 302 (N.D. Ill. 1965)[2], noted that an advertiser's statement that its lamps were "far brighter than any lamp ever offered for home moves" was considered puffery but that statements that a lamps has "35,000 candle power and 10-hour life" were actionable assertions of fact.  Id. at 308–09.

Here, several of the representations alleged by the Walters are obviously puffery because they are not specific and measurable claims of product superiority:  "Pella Designer Series windows and patio doors give you less to worry about and more ways to decorate your home"; "You can rest assured that your Designer Series windows and patio doors will look beautiful and perform beautifully for years to come"; "Years of smooth openings and closings"; and "The quality, beauty and innovation that Pella is famous for are particularly evidence in the hardware on your Designer Series windows and patio

---

[2] The parties do not cite directly to Smith-Victor, but rather cite to Viggiano v. Hansen Natural Corp., 944 F. Supp. 2d 877 (C.D. Cal. 2013), which discusses Smith-Victor in some detail.

doors." Am. Compl. ¶ 42. Because these statements are mere puffery, they cannot provide a basis for the Walters' breach of express warranty claim.

However, other representations present a closer question: "Pella represented and warranted that each Window conformed to the applicable Nevada building codes, applicable ASTM standards, applicable American Architectural Manufacturers Association ('AAMA') standards and applicable National Fenestration Ratings Council ('NFRC'), applicable Window & Door Manufacturers Association ('WDMA')"; "Proven resistance to water penetration"; "Pella's most energy-efficient wood and windows and doors"; "[Designer Series are] test [sic] for air infiltration to help eliminate drafts"; and "More decorative style choices that [sic] any other brand." Am. Compl. ¶¶ 39, 42.

Even among these representations that could possibly constitute express warranties, Pella argues that the Walters do not actually allege some of these claims to be false. Def.'s Reply 9. For instance, the amended complaint contains no allegations that the windows were <u>not</u> Pella's most energy-efficient, that the windows were <u>not</u> tested for air infiltration to help eliminate drafts, or that Pella does <u>not</u> offer more decorative style choice than any other brand. <u>See</u> <u>In re Sony Grand Wega Rear Projection HDTV Television Litig.</u>, 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010) ("Plaintiffs have not sufficiently alleged that those representations were untrue or misleading at the time they were made."); <u>Viggiano v. Hansen Natural Corp.</u>, 944 F. Supp. 2d 877, 894 (C.D. Cal. 2013) (holding that breach of express warranty claim based on statement that a soda contained "all natural flavors" failed because the statement accurately described the product and the plaintiff did not identify any artificial flavor in the drink). Because the Walters do not allege that Pella's representations regarding tests for air infiltration, the

number of decorative styles offered, or the windows' energy efficiency are false, they cannot form the basis of the Walters' breach of express warranty claim.

That leaves only the representations regarding Nevada building codes, industry standards, and proven resistance to water intrusion. These statements could be considered "misdescriptions of specific or absolute characteristics of a product" or "specific and measurable advertisement claim[s] of product superiority based on product testing." Southland Sod, 108 F.3d at 1145. Therefore, the court finds that the Walters properly plead a breach of express warranty claim with regard to these statements.

**B.     Count II—Breach of Implied Warranties**

Pella argues that the Walters' implied warranties claim is barred by the statute of limitations. Def.'s Mot. 9.

Under Nevada law, breach of warranty claims are subject to a four-year statute of limitations. Nev. Rev. Stat. § 104.2725(1). The statute of limitations accrues upon delivery unless the warranty "explicitly extends to the future performance of the goods." Id. § 104.2725(2). Although Nevada courts have not examined the issue, the majority rule is that implied warranties, by their very nature, do not explicitly extend to future performance. See Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 223 F.3d 873, 879 (8th Cir. 2000); W. Recreational Vehicles, Inc. v. Swift Adhesives, Inc., a Div. of Reichhold Chemicals, Inc., 23 F.3d 1547, 1550 (9th Cir. 1994). The Walters' house was completed in July 2009, Am. Compl. ¶ 23, and the statute of limitations expired on their breach of implied warranties claim by July 2013. Because the Walters did not file this action until October 3, 2013, their implied warranties claim is barred unless the statute of

limitations has been tolled.  The Walters argue that equitable tolling and repair tolling both toll the statute of limitations.[3]  The court will consider each tolling doctrine in turn.

### 1.     Equitable Tolling

In their amended complaint, the Walters assert that the doctrine of equitable tolling prevents Pella from relying on a statute of limitations defense.[4]  Am. Compl. ¶ 70.

The Nevada Supreme Court originally adopted the doctrine of equitable tolling for Nevada's antidiscrimination statutes.  Copeland v. Desert Inn Hotel, 673 P.2d 490, 492 (Nev. 1983).  It has since "expanded [equitable tolling] to operate in other areas of law," Seino v. Employers Ins. Co. of Nev, 111 P.3d 1107, 1112 (Nev. 2005), such as tolling the deadline to enforce judgments.  O'Lane v. Spinney, 874 P.2d 754, 757 (Nev. 1994).  However, "[e]ven when the claim's untimeliness is due to a procedural technicality, application of the doctrine is appropriate only when the danger of prejudice to the defendant is absent and the interests of justice so require."  State Dep't of Taxation v. Masco Builder Cabinet Grp., 265 P.3d 666, 671 (Nev. 2011) (citation and internal quotation marks omitted).  Factors relevant to the equitable tolling analysis include:

> the diligence of the claimant; the claimant's knowledge of the relevant
> facts;  the  claimant's  reliance  on  authoritative  statements  by  the

---

[3] While Pella anticipated that the Walters would argue for the application of class action tolling, Def.'s Mot. 21, the Walters have not advanced such an argument, either in their amended complaint or their response.

[4] In their response, the Walters argue that this court has previously determined that it is inappropriate to rule on equitable tolling claims at the motion to dismiss stage. Pls.' Resp. 13.  However, the Walters misread the cases cited.  In those cases, the court denied a motion to strike allegations regarding equitable tolling because the defendant had not moved to dismiss any claims on a statute of limitations basis.  See, e.g., Wani v. MI Windows & Doors, Inc., No. 2:12-cv-01255, 2012 WL 4482928, at *6 (D.S.C. Sept. 27, 2012).  The court determined that "if [the defendant] seeks dismissal based on the expiration of a statute of limitations in the future, the [the plaintiffs] may contend that tolling is appropriate."  Id. (emphasis added); see also Meifert v. MI Windows & Doors, Inc., No. 2:12-cv-01256, 2012 WL 4846987, at *6 (D.S.C. Oct. 11, 2012).

> administrative agency that misled the claimant about the nature of the
> claimant's rights; any deception or false assurances on the part of the
> employer against whom the claim is made; the prejudice to the employer
> that would actually result from delay during the time that the limitations
> period is tolled; and any other equitable considerations appropriate in the
> particular case.

Seino, 111 P.3d at 1112 (quoting Copeland, 673 P.2d at 492).

The Walters' failure to respond to the substance of Pella's argument makes analyzing this issue difficult. However, from the court's survey of Nevada case law, it appears that equitable tolling is a very limited doctrine that is rarely applied in civil cases outside of employment actions or cases involving administrative proceedings. Moreover, the court has not found any Nevada state court case which applied equitable tolling to toll the statute of limitations for claims similar to those brought by the Walters. Therefore, the court finds that equitable tolling does not toll the statute of limitations for the Walters' breach of implied warranties claim. See Kee v. Terrible's Primm Valley Casino Resorts, 2015 WL 280830, at *2 (Nev. Ct. App. Jan. 21, 2015) (holding that the plaintiff had not established that equitable tolling was warranted because he had not "support[ed] [his] request with authority demonstrating that other courts have applied equitable tolling under similar circumstances").

### 2.     Repair Tolling

Next, the Walters argue that the statute of limitations was tolled by Pella's efforts to repair the windows. Pls.' Resp. 12.

In Sierra Diesel Injection Serv. v. Burroughs Corp., 648 F. Supp. 1148, 1152–53 (D. Nev. 1986), a district court in Nevada predicted that the Nevada Supreme Court would adopt the repair tolling doctrine, which provides that "repair promises and attempts can toll the running of the statute of limitations." Sierra Diesel relied on

California law, which recognizes the repair tolling doctrine.  Id.  However, in the 30 years since Sierra Diesel was decided, Nevada state courts have not adopted the repair tolling doctrine.  Therefore, the court must determine whether the Nevada Supreme Court would adopt the repair tolling doctrine if the issue were before it today.

When Sierra Diesel was decided, the court determined that the repair tolling doctrine appeared to be "the general rule."  648 F. Supp. at 1152.  Whether that was the case in 1986 is unclear; however, it no longer seems to be the case.  More recently, courts have noted that "the repair doctrine has been endorsed in few jurisdictions."  Holbrook, Inc. v. Link-Belt Constr. Equip. Co., 12 P.3d 638, 643 (Wash. Ct. App. 2000) (collecting cases); see also N. Am. Commc'ns, Inc. v. InfoPrint Solutions Co., LLC, 817 F. Supp. 2d 623, 633 (W.D. Pa. 2011) ("The majority of jurisdictions, including New York, have declined to apply this doctrine/exception."); In re Dynaco Corp., 200 B.R. 750, 756 (Bankr. D.N.H. 1996) (recognizing that a majority of jurisdictions had rejected the repair tolling doctrine and predicting that New Hampshire courts would do the same).

Most jurisdictions that reject the doctrine do so because "granting exceptions to specific statutes of limitation is the prerogative of the legislature" and because the "repair doctrine conflicts with the purpose for applying the four-year limitations period to breach of warranty claims—to permit commercial sellers to discard their warranty records at the end of the normal commercial record keeping period."  Holbrook, 12 P.3d at 643 (citation and internal quotation marks omitted).  Moreover, courts have noted that the doctrine would discourage attempts to correct defects in products because "[a]ny repairs voluntarily undertaken by a product seller would be to the seller's detriment as each repair would start anew the running of the statute of limitations."  Id. at 644.

2:14-cv-00544-DCN    Date Filed 05/19/15    Entry Number 49    Page 16 of 24

Nevada law is clear that a breach of warranty accrues upon delivery and makes no mention of repair tolling. Nev. Rev. Stat. § 104.2725. Therefore, the court determines that, if faced with the issue, the Nevada Supreme Court would follow the same sound reasoning as the majority of jurisdictions and reject the repair tolling doctrine.

Because neither equitable tolling nor repair tolling applies to toll the statute of limitations, the court dismisses the Walters' breach of implied warranties claim.

### C.    Count III—Negligence

Next, Pella argues that the Walters' negligence claim is barred by the economic loss rule. Def.'s Mot. 11.

"The economic loss doctrine marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others." Calloway v. City of Reno, 993 P.2d 1259, 1263 (Nev. 2000) (citation omitted). Under the doctrine, "there can be no recovery in tort for purely economic losses." Id. (internal quotation marks and citation omitted). Purely economic loss is generally defined as "the loss of the benefit of the user's bargain . . . including . . . pecuniary damage for inadequate value, the cost of repair and replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property." Id. (internal quotation marks and citation omitted). "[E]conomic losses are not recoverable in negligence absent personal injury or damage to property other than the defective entity itself." Id. at 1267.

Nevada law takes an expansive view of what constitutes "the defective entity" in construction cases. In Calloway, the plaintiffs alleged that the defective "product," the

framing of a house, caused "other" property damage—namely, water intrusion, damage to the flooring and ceilings, and structural and wood decay. Id. The Nevada Supreme Court applied the economic loss doctrine and denied recovery in tort, concluding that when "an integral component injures the rest of the product, only economic loss has occurred" and that "inferior workmanship, which leads to building deterioration, is not properly addressed by tort law." Id. at 1267, 1269.

The Walters allege that water intrusion through their windows caused damage to "other property within the home."[5] Am. Compl. ¶ 48; see also id. ¶ 9 ("[T]he Windows have caused damage to other property within their home . . . ."). In a similar multidistrict litigation involving windows, this court determined that allegations of damage to "other property" were "too vague" to survive the economic loss rule, while allegations of damage to "other personal property," although "by no means highly detailed," properly stated a claim for negligence. Hildebrand v. MI Windows & Doors, Inc., 908 F. Supp. 2d 720, 726 (D.S.C. 2012). Therefore, the Walters' allegation of damage to "other property" is insufficient to state a claim for negligence and the court dismisses their negligence claim.

### D.      Counts IV—Negligent Misrepresentation

---

[5] The Walters' response claims their amended complaint alleges damages to "other personal property." Pls.' Resp. 7 (emphasis added). However, the amended complaint does not reference personal property. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Fieger v. Supreme Court of S.C., No. 3:10-cv-1038, 2010 WL 3521606, at *4 (D.S.C. Aug. 16, 2010) (citing Myland Labs., Inc. v. Akzo, 770 F. Supp. 1053, 1068 (D. Md. 1991)).

Pella argues that the Walters' negligent misrepresentation claim should be dismissed because it fails to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b).  Def.'s Mot. 13.

Rule 9(b) provides that a party alleging fraud "must state with particularity the circumstances constituting fraud."  See  Beckman v. Match.com, 2013 WL 2355512 (D. Nev. May 29, 2013) (holding that because a negligent misrepresentation claim under Nevada law "sounds in fraud, [a] plaintiff's allegations must meet Rule 9(b)'s standards.").  Rule 9(b) ensures that defendants have adequate notice of the conduct complained of, protects them from frivolous suits, eliminates fraud actions in which all the facts are learned after discovery, and protects defendants from harm to their goodwill and reputation.  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted).  In order to satisfy Rule 9(b), the complaint must allege the "who, what, when, where and how of the alleged fraud," U.S. ex rel. Ahumada v. NISH, 756 F.3d 268, 280 (4th Cir. 2014), or the "first paragraph of any newspaper story."  Great Plains Trust Co. v. Union Pac. R.R. Co., 492 F.3d 986, 995 (8th Cir. 2007); see also U.S. ex rel. Elms v. Accenture LLP, 341 F. App'x 869, 872 (4th Cir. 2009) (holding Rule 9(b) requires a plaintiff to allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby").

To the extent the Walters' negligent misrepresentation claim is based on affirmative misrepresentations, the amended complaint is completely lacking in detail as to who made the misrepresentations, when they were made, or where they were made. Therefore, the complaint fails to plead any affirmative fraud with particularity, and the

court dismisses the Walters' negligent representation claim to the extent it is based on affirmative misrepresentations.

The Walters' also appear to allege that Pella made negligent misrepresentations by nondisclosure. See Am. Compl. ¶ 118 ("Pella made misrepresentations and omissions of material facts . . . ." (emphasis added)). While the Nevada Supreme Court has not considered whether such a cause of action exists, at least one Nevada district court has predicted that the Nevada Supreme Court would recognize the tort of negligent misrepresentation by nondisclosure. See In re Agribiotech, Inc., 291 F. Supp. 2d 1186, 1191 (D. Nev. 2003). Therefore, the court assumes, without deciding, that the tort exists for the purposes of this motion.

However, to plead negligent misrepresentation by nondisclosure, a plaintiff must show that the defendant had a duty to disclose as a result of a "special relationship" between the parties. Id. at 1192. "A duty to disclose arises where there is a fiduciary relationship or where there is a 'special relationship,' such that the complaining party imparts special confidence in the defendant and the defendant reasonably knows of that confidence." Peri & Sons Farms, Inc. v. Jain Irr., Inc., 933 F. Supp. 2d 1279, 1292 (D. Nev. 2013). However, simply manufacturing or selling an alleged defective product is not enough to support the required relationship. Id. Regardless, "[t]he duty to disclose requires, at a minimum, some form of relationship between the parties." Dow Chem. Co. v. Mahlum, 970 P.2d 98, 110 (Nev. 1998).

Here, the Walters have failed to allege that Pella had a duty to disclose or that there was any relationship between them and Pella, much less a special relationship, as required by Nevada law. Therefore, the court dismisses the Walters' negligent

19

misrepresentation claim to the extent it alleges negligent misrepresentation by

nondisclosure.

### E.     Count V—Fraud by Uniform Written Misrepresentation and Omission

Pella next argues that the Walters' fraud by uniform written misrepresentation and

omission claim should be dismissed because it is not a cause of action under Nevada law.

Def.'s Mot. 15.  In its own research, the court has been unable to find such a cause of

action.  Therefore, the court dismisses the Walters' fraud by uniform written

misrepresentation and omission claim.[6]

### F.     Count VI—NDTPA Violation

Pella argues that the Walters have failed to plead their NDTPA claim with

particularity under Rule 9(b).  Def.'s Mot. 17.

As discussed above, the Walters have failed to plead an affirmative

misrepresentation with particularity.  Therefore, to the extent their NDTPA claim is based

on affirmative misrepresentations, the court dismisses the claim.

However, many courts have recognized the difficulty of applying Rule 9(b)'s

particularity requirement to fraudulent concealment or omission claims, and have instead

applied a relaxed, less formulaic version of the rule.  See, e.g., Ademiluyi v. PennyMac

Mortgage Inv. Trust Holdings I, LLC, 929 F. Supp. 2d 502, 533 (D. Md. 2013) (holding

that Rule 9(b) is "less strictly applied" with respect to claims of fraud by omission of

material facts, because "an omission cannot be described in terms of the time, place, and

contents of the misrepresentation or the identity of the person making the

---

[6] The court has enough trouble deciding motions to dismiss with claims that actually exist.  Needless to say, claims that do not exist present a particularly difficult task.

misrepresentation"); <u>Carideo v. Dell, Inc.</u>, 706 F. Supp. 2d 1122, 1133 (W.D. Wash. 2010) ("The Rule 9(b) standard is relaxed in fraudulent omission cases" because in such cases, "a plaintiff will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." (internal quotation marks omitted)); <u>In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.</u>, 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009) ("Requiring a plaintiff to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission."); <u>Bonfield v. AAMCO Transmissions, Inc.</u>, 708 F. Supp. 867, 875 (N.D. Ill. 1989) ("Like Sherlock Holmes' dog that did not bark in the night, an actionable omission obviously cannot be particularized as to the time, place, and contents of the false representations or the identity of the person making the misrepresentation." (internal quotation marks omitted)).

Although the Fourth Circuit has not adopted this relaxed Rule 9(b) standard, a relaxed standard comports with the Fourth Circuit's instruction that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." <u>Harrison</u>, 176 F.3d at 784. Additionally, the court finds the reasoning supporting a relaxed standard persuasive and therefore will apply it to the Walters' fraud-based claims to the extent they assert fraudulent omissions or concealment.

Whether the Walters' allegation of fraudulent omission under the NDTPA satisfies the relaxed Rule 9(b) standard is a closer question. The Walters' complaint is not overly-detailed, but, as described above, the nature of a fraudulent omission makes it

difficult to plead with detail.  In a case with similar facts, a Maryland district court held

that the plaintiffs had properly pleaded fraudulent concealment with particularity where

they alleged:  that the defendant was aware of a product defect and how the defendant

became aware of the defect; that the defendant concealed the defect from the plaintiffs;

and that the plaintiffs would have taken different actions had they known about the

defect.  Doll v. Ford Motor Co., 814 F. Supp. 2d 526, 538–39 (D. Md. 2011); see also

Whirlpool Corp., 684 F. Supp. 2d at 961.

Since the Walters have pleaded facts similar to those alleged in Doll—that Pella

was aware of a defect, that Pella concealed the defect from consumers, and that plaintiffs

would have taken different action had they known about the defect—the court denies

Pella's motion to dismiss the Walters' NDTPA claim to the extent they are based on

fraudulent omissions.[7]

### G.    Count VII—Declaratory Relief

Pella argues that the Walters' declaratory relief claim fails because it lacks a

substantive foundation and because the Walters have an adequate remedy at law.  Def.'s

Mot. 18.

The Declaratory Judgment Act states that

In a case of actual controversy within its jurisdiction . . . any court of the
United States, upon the filing of an appropriate pleading, may declare the
rights and other legal relations of any interested party seeking such
declaration, whether or not further relief is or could be sought.

28 U.S.C.A. § 2201.  The Declaratory Judgment Act is intended to help parties resolve

legal disputes before either party can seek or has sought a coercive remedy through the

---

[7] Although the parties have not briefed the issue, it appears that fraudulent
omissions or concealment are actionable under the NDTPA.  See Nev. Rev. Stat. §
598.0923 (making it a deceptive trade practice to "[f]ail[] to disclose a material fact in
connection with the sale or lease of goods or services").

courts.  10B Charles Alan Wright & Arthur A. Miller, Federal Practice and Procedure §

2751 (3d ed. 1998).  Courts have "long recognized the discretion afforded to district

courts in determining whether to render declaratory relief."  Aetna Cas. & Sur. Co. v.

Ind-Com Elec. Co., 139 F.3d 419, 421–22 (4th Cir. 1998).

     Declaratory relief is inappropriate at this stage, as the merits of the Walters'

substantive claims have not been adjudicated.  See Kennedy v. MI Windows & Doors,

Inc., No. 2:12-cv-2305, 2013 WL 267853, at *6 (D.S.C. Jan. 24, 2013); F.D.I.C. v.

OneBeacon Midwest Ins. Co., 883 F. Supp. 2d 754, 761–62 (N.D. Ill. 2012) (dismissing a

declaratory relief claim that raised the same issue as a substantive legal claim already

before the court); Vill. of Sugar Grove v. F.D.I.C., 2011 WL 3876935, at *9 (N.D. Ill.

Sept. 1, 2011) ("We have discretion to decline to hear a declaratory judgment action and

courts have exercised that discretion where a plaintiff seeks a declaratory judgment that

substantially overlaps it substantive claims") (internal citations omitted); Monster Daddy

LLC v. Monster Cable Prods., Inc., No. 6:10-cv-1170, 2010 WL 4853661, at *6 (D.S.C.

Nov. 23, 2011) (dismissing three declaratory relief counterclaims because they "raise the

same legal issues that are already before the court").

     Therefore, the court dismisses the Walters' claim for declaratory relief.

## IV.   CONCLUSION

Based on the foregoing, the court **GRANTS IN PART AND DENIES IN PART** Pella's motion and **DISMISSES WITHOUT PREJUDICE** the Walters' breach of implied warranties claim; negligence claim; negligent misrepresentation claim; fraud by uniform written misrepresentation and omission claim; NDTP claim to the extent it relies on affirmative misrepresentations; and declaratory relief claim.

**AND IT IS SO ORDERED**.

_____

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 19, 2015**
**Charleston, South Carolina**